City of Philadelphia Tax Review Board, Appellant *v.* Penn Center House, Inc., Appellee.

Argued June 6, 1983, before President Judge CRUMLISH, JR., and Judges DOYLE and BARBIERI, sitting as a panel of three.

*Gayle R. Smith,* Assistant City Solicitor, with her *Augustus L. Pasquerella,* Assistant City Solicitor, and *Mark A. Aronchick,* Acting City Solicitor, for appellant.

*Peter J. Picotte, II, Dilworth, Paxson, Kalish & Kauffman,* for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., March 9, 1984:

City of Philadelphia Tax Review Board appeals a Philadelphia County Court of Common Pleas decision holding that Penn Center House, Inc., is not subject to the city's mercantile license tax on carrying charges it receives from member-tenants.[1] We affirm.

The record discloses that Penn Center House, Inc., is a cooperative housing corporation which owns a multi-story apartment building containing 432 apartment units. The trial court found that Penn Center House, Inc., is a Maryland corporation organized and established for the purpose of providing rental housing on a cooperative basis.

The evidence further reveals the following: Each member-tenant, after executing an occupancy agreement, pays a lump sum capital contribution which varies according to size of the apartment. The member-tenants also pay a monthly carrying charge to

---

[1] As a result of a January 1972 audit of the Penn Center House, Inc., the Department of Collections of the City of Philadelphia determined that the corporation had erroneously excluded 1970 carrying charges collected from its members for the year 1971. Thereafter, the corporation filed a Petition for Review with the Philadelphia Tax Return Board. The Board upheld the assessment and dismissed the petition. On appeal, the Philadelphia County Court of Common Pleas reversed the Board.

reimburse Penn Center House, Inc., for their proportionate share of the corporation's expenses for operations, management, taxes, insurance, utilities, reserve funds, and mortgage principal and interest. The corporation refunds to its members any excess from carrying charges paid in over actual expenses at the end of the fiscal year.[2] The Tax Review Board contends that the collection of carrying charges results in pecuniary benefits to the housing cooperative corporation.

The issue presented in this appeal is whether the trial court committed an error of law in determining that carrying charges paid by member-tenants are not subject to Philadelphia's mercantile license tax. Accordingly, we must decide whether Penn Center House, Inc., is "engaged in business" within the meaning of Sections 19-1001—19-1005 of the Code of General Ordinances of the City of Philadelphia [Mercantile License Tax]. The ordinance provides: "Every person[3] engaging in any of the following businesses in the City shall . . . pay an annual mercantile license tax . . . ." §19-1003. The persons listed do not include cooperatives but embody wholesalers, retailers, dealers, vendors, manufacturers and all other persons engaged in business. In §19-1001, the term "business" is defined as:

---

[2] The housing cooperative receives rental receipts from nonmember commercial tenants which include a bank, a parking garage operating organization, and income from vending machines and public telephones. The court below found this income inures to the benefit of the member-tenants in the form of reduced carrying charges. Penn Center House, Inc., does not contest the mercantile license tax on these receipts.

[3] Section 1-103(9) of the Philadelphia Code defines "person" as "[a]n individual, partnership, corporation, or association . . . . '[P]erson' as applied to partnerships or associations shall include the partners or members thereof, and if applied to corporation, the officers thereof."

The carrying on or exercising for gain or profit within the City any trade, business, profession, vocation, or making sales to persons within the City, or any manufacturing, commercial or financial activity, service or business, including but not limited to manufacturers, brokers, wholesale dealer or wholesale vendors, retail dealers or vendors.[4]

The tax is imposed on gross receipts of persons in a commercial activity carried on for gain or profit. "A mercantile license tax as its name implies is a levy on the privilege of conducting a commercial enterprise for profit. It is not a property tax." *Ed. McKean Oldsmobile Co. v. Pittsburgh,* 407 Pa. 106, 111-12, 180 A.2d 46, 49 (1962). The test in determining the taxability of income under a mercantile tax is "neither the characterization of the receipt nor the size of the business; rather, it is the nature of the activity producing the receipt." *Tax Review Board v. Brine Corp,* 414 Pa. 488, 494, 200 A.2d 883, 886 (1964). In *Brine,* the Pennsylvania Supreme Court continued by stating:

These differences in how the property was acquired or circumstances under which it is re-

---

[4] The ordinance also provides:

"Business" shall not include the following:

(a)  any activity conducted by a nonprofit corporation or association organized for religious, charitable, or educational purposes.

§19-1001(1)(a). The ordinance lists other activities that do not pertain to housing cooperatives. However, case law demonstrates, when interpreting this particular ordinance, courts do not rely on the concept that the exemptions should be included within the ordinance with clear and explicit language. *See Tax Review Board of Philadelphia v. Heintz Investment Co.,* 461 Pa. 249, 336 A.2d 270 (1975). The sole test then is whether the taxpayer is engaged in business as defined in the ordinance.

tained, in how it is used, in services performed by way of management, and in the overall objectives of the owner are the differences which lead to tax in one case and not in the other. (Footnote omitted.)

*Brine*, 414 Pa. at 494, 200 A.2d at 886.

Under the ordinance, "a distinction must be made between 'a taxable's active conduct of a money making occupation' and 'acts done by one not engaged in business but merely conserving his property.' " *Dunn v. Tax Review Board, City of Philadelphia*, 67 Pa. Commonwealth Ct. 431, 435, 447 A.2d 691, 693 (1982), quoting *Price v. Tax Review Board*, 409 Pa. 479, 485, 187 A.2d 280, 283 (1963). Our Court in *Dunn* recognized that:

The determination of a business activity for purposes of taxability under . . . 19-1000 [Mercantile License Tax] of The Philadelphia Code is governed . . . by . . . Weiner . . . where the Court held that the crucial elements of a rental business under The Philadelphia Code are (1) the deliberate acquisition of property for the purpose of conducting a rental business and, (2) the provision of any services with regard to the property. The Court in Weiner stated in part: "The conclusion would then be that *any quantum of such action, such as deliberate acquisition and the provision of even minimal services, would qualify the activity in question as a business activity and merit the imposition of the tax.*" 211 Pa. Superior Ct. at 238, 235 A.2d at 188 (emphasis in original).

*Dunn*, 67 Pa. Commonwealth Ct. at 435, 447 A.2d at 693, quoting *Schorsch v. Tax Review Board*, 49 Pa. Commonwealth Ct. 225, 227, 410 A.2d 1305, 1306 (1980).

Penn Center House, Inc., has not deliberately acquired the property to carry on a rental business. The record tells us that the member-tenants are treated as homeowners for purposes of the mercantile license tax.[5] Each member-tenant is charged by the cooperative corporation for his pro rata share of housing costs which are incurred in behalf of all the member-tenants. The member-tenants may take advantage of federal[6] and state[7] income tax laws unique to a homeowner. Furthermore, the member-tenants are prohibited from making a profit or from selling their unit to others without board approval. The maintenance benefits, if any, accruing to Penn Center House, Inc., are indirect. The housing cooperative is in no sense engaged in the business of leasing, buying or selling units for profit.

The Tax Review Board submits that the Pennsylvania Supreme Court's decision in *Commonwealth v. 2101 Cooperative, Inc.*, 408 Pa. 24, 183 A.2d 325 (1962), establishes that cooperative apartment living is profitable to its member-tenants and therefore subject to the mercantile license tax. The Board argues the profitable advantages include: the federal tax deductibility of real estate taxes and mortgage interest; the exis-

---

[5] Pursuant to Article II of the Penn Center House, Inc., Articles of Incorporation, the purpose for which the housing cooperative was formed was to create a corporation to provide housing for rent on a cooperative basis. Article V states: "The Corporation is organized on a non-stock basis and it will not be operated for profit."

[6] For federal income tax purposes, the record indicates the member-tenants may deduct their percentage share of the cooperative's expenditures for real estate taxes and mortgage interest payments as if they owned their own home. Also similar to a homeowner, a member-tenant in a housing cooperative may defer capital gain on the sale of the cooperative's "stock" if it is reinvested in another principal residence. I.R.C. §1034(f) (1983).

[7] The record indicates that member-tenants are able to apply for and receive Pennsylvania real estate tax assistance available only to homeowners.

tence of replacement and operating reserves, nominal parking fees, equipment and services; the reduction of carrying charges due to rental receipts from commercial tenants; the right of outgoing tenants to sell their membership if the corporation does not exercise its right to repurchase; and the recoupment of their initial capital contribution plus their proportionate share of the amount by which the mortgage on the building was amortized.

The common pleas court correctly concluded that the cases are distinguishable because *2101 Cooperative* involved the Pennsylvania Foreign Franchise Tax Act[8] and the issue was whether a Maryland cooperative apartment corporation qualified as a non-profit corporation within the meaning of the Pennsylvania statute. The Pennsylvania Supreme Court decided that the *2101 Cooperative, Inc.*, was not a non-profit corporation as that term was used in the Foreign Franchise Tax Act. However, the Court did not address the issue before us, which is whether a cooperative housing corporation is engaged in business, *i.e.*, conducting taxable commercial activities vested with a profit motive, thus subjecting their carrying charges to this tax.

---

[8] The Foreign Franchise Tax Act provided: "Every foreign corporation, joint-stock association, limited partnership, and company whatsoever, from which a report is required under the twentieth section hereof, shall be subject to . . . a franchise tax." Section 21 of the Act of June 1, 1889, P.L. 420, *as amended*, added by Section 21(b) of the Act of May 16, 1935, P.L. 184, *formerly* 72 P.S. §1871(b), repealed by the Act of March 4, 1971, P.L. 6. A similar act is now found at 72 P.S. §§7601-7606. Section 20 of the Foreign Franchise Tax Act, *formerly* 72 P.S. §1901, provided:

Hereafter, except in the case of corporations of the first class, nonprofit corporations, and cooperative agricultural associations not having capital stock and not conducted for profit . . . it shall be the duty of every corporation having capital stock . . . to make annually . . . a [tax] report . . . .

The City ordinance and the state statute are unrelated because the criteria for tax or exemption are based on different concepts. The Foreign Franchise Tax Act imposes an excise tax upon the privilege of doing business in Pennsylvania, the measure of which is the value of the capital stock related to the exercise of the state franchise conferred. *Commonwealth v. National Biscuit Co.*, 390 Pa. 642, 645-50, 136 A.2d 821, 823-25 (1957), *appeal dismissed* 357 U.S. 571 (1958).[9] Having capital stock is not a requirement for the Philadelphia mercantile license tax which is imposed only upon the annual gross receipts of persons engaged in business within the city. Further, the purpose of the local business privilege tax implies, unlike the state tax, that there must be more than the mere receipt of a benefit to trigger the tax, there must be a profit motive. Under the state tax, it appears that exemption may be lost if one merely obtains personal benefits.

In *2101 Cooperative*, the Pennsylvania Supreme Court relied heavily on the fact that agricultural cooperatives constituted the only class of cooperatives exempted from the Franchise Tax Act and since a housing cooperative corporation has not been specifically exempted from the state tax, it should be subject to the state tax. Unlike the Pennsylvania Franchise Tax Act, Philadelphia's mercantile license tax ordinance does not include agricultural cooperatives in the provision of specific exemptions to the definition of "business." Since the statutes are materially different, we must only examine the city ordinance to determine whether Penn Center House, Inc., is exempt

---

[9] Under the Foreign Franchise Tax Act, the business transacted was measured through allocation fractions involving the proportion which the tangible property, payroll, and gross receipts in the state respectively bear to the total assets, payroll, and gross receipts of the corporation. *See National Biscuit Co.* at 645, 136 A.2d at 822.

from taxation under the Philadelphia mercantile license tax ordinance.

In *Philadelphia School District v. Frankford Grocery Co.*, 376 Pa. 542, 103 A.2d 738 (1953) our Supreme Court held that "business" as contemplated by the Philadelphia School District Tax Act means business for gain or profit with a profit motive. The Court disagreed with the School District's view that "business" should include any commercial activity and not limited to a business carried on for gain or profit. The definition of "business" under the general business tax imposed by Act of May 23, 1949, P.L. 1669 *as amended* 24 P.S. §584.1(2) is substantially similar to that of the Philadelphia mercantile license tax ordinance. *Tax Review Board v. Brine Corp.*, 414 Pa. 488, 493, 200 A.2d 883, 886 (1964).

In *Frankford Grocery,* a corporation was formed for the purpose of creating a purchasing agency for several retail grocers whereby they could compete with the larger businesses by obtaining the savings that accompany quantity buying. The Pennsylvania Supreme Court held that the company was not subject to tax on receipts received from the member retail grocers for merchandise withdrawn by them. The Court stated:

> This matter thus reduces itself to the question whether the defendant *in its cooperative functioning* is carrying on a business for gain or profit, and therefore within the purview of the tax . . . . That it pays the tax on some of its activities does not prevent immunity from tax on its nonprofit activities. (Emphasis added.)

*Frankford Grocery* at 549, 103 A.2d at 741. Even though the grocery cooperative conducted commercial activities, it lacked a motive to make money on its activities. Like the cooperative in *Frankford Grocery,* Penn Center House, Inc., is not in business for profit

insofar as its cooperative function is concerned. The Court stated:

> When a group of individuals enter into an agreement to pool their resources for a common purpose and state therein that their contributions to the extent not required for that purpose shall be repaid to them, it is hard to conceive how the contributions returned to them should be regarded as a gain or profit to the entity acting as their mutual agent.

*Frankford Grocery,* 376 Pa. at 551-52, 103 A.2d at 742.

The court of common pleas properly held that the incidental benefits do not convert the cooperative's carrying charges to receipts realized from a business activity for purposes of the mercantile license tax in Philadelphia. The persons living in the building are not engaged in a business and the corporation is not engaged in the business of buying, selling or leasing real estate.

Affirmed.

### ORDER

The order of the Court of Common Pleas of Philadelphia County dated January 8, 1981, No. 1258 January Term 1976, is affirmed.